Janice P. Brown (SBN: 114433)
jbrown@meyersnave.com
David M. Middleton (SBN: 321385)
dmiddleton@meyersnave.com
Kiana M. Caton (SBN: 332749)
kcaton@meyersnave.com
MEYERS NAVE
600 B Street, Suite 1650
San Diego, California 92101
Telephone: (619) 330-1700
Facsimile: (619) 330-1701

Attorney for Plaintiffs
TIMOTHY D. MARTIN
and JT REALTY INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY D. MARTIN, an individual; and JT REALTY INC., a California corporation.<br><br>Plaintiffs,<br><br>v.<br><br>RONALD SNYDER, an individual; BENEFIT STRATEGIES GROUP, LLC, a Utah limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR ACTIONS ARISING UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**<br><br>Trial Date:      None Set |

COMPLAINT

Plaintiffs Timothy D. Martin ("Martin") and JT Realty Inc. ("JT Realty") (Martin and JT Realty are collectively referred to herein as "Plaintiffs"), by and through their undersigned attorneys, file this Complaint against Defendants Ronald Snyder ("Snyder"), Benefit Strategies Group, LLC, ("BSG") and DOES 1-20 (collectively, "Defendants"), as follows:

## THE PARTIES

1. Martin is a resident of San Mateo County, California. During the relevant time period, Martin was a participant, as defined by § 3(7) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(7), in the Benefits for Corporate America Inc. Supplemental Executive Retirement Plan and later in the Benefits for Corporate America Inc. Deferred Compensation Plan.

2. JT Realty is a California corporation with its headquarters in Alameda County, California. JT Realty conducts business throughout the State of California, including the district where this action is filed.

3. Snyder is a resident of Salt Lake County, Utah.

4. BSG is a Utah limited liability company. BSG conducts business in the State of California, including the district where the action is filed. Snyder is the President of BSG and the Managing Member.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

6. **Personal Jurisdiction**. ERISA provides for nation-wide service of process pursuant to ERISA § 502, 29 U.S.C. § 1132. All Defendants are either residents of the United States or subject to service in the United States, and this Court therefore has personal jurisdiction over them. Jurisdiction is proper over BSG because it transacted business in the State of California, contracted to supply services in the State of California, and caused injury within the State of California,

as more specifically described herein.

7. **Venue**. An action may be brought in the district court where the plan is administered, where the breach took place, or where a defendant resides or may be found. Venue lies within the Central District of California pursuant to 29 U.S.C. § 1132(e)(2) and Local Rule 83-1.3, because the breaches and patterns of fiduciary misconduct alleged herein are related to the breaches alleged in *Larry Gliko et al. v. Ronald Snyder et al.,* Case No. 8:22-cv-00145-DOC-KES.

## STATEMENT OF FACTS

### A. Benefits for Corporate America Inc. Supplemental Executive Retirement Plan

8. The Benefits for Corporate America Inc. Supplemental Executive Retirement Plan (the "SERP") was established by Benefits for Corporate America, Inc. ("BCA"), a Nevada corporation.

9. BCA was the "Plan Sponsor" and BSG was the "Administrator" of the SERP at the time it was established and during the SERP's operation.

10. To begin participating in the SERP, TM Realty, Inc. (a predecessor entity to JT Realty) was provided a Co- Employment and Adoption Agreement. On or about December 27, 2006, the Board of Directors of TM Realty, Inc. adopted the SERP.

11. The SERP contains the following key provision:

   a. **11.1 Non-Alienation of Benefits** – Other than as provided in Section 7.9, no benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge and any such action shall be void for all purposes of the Plan. No benefit shall in any manner be subject to the debts, contracts, liabilities, engagements, or torts of any person, nor shall it be subject to attachments or other legal process for or against any person, except to such extent as may be required by law.

12. In conjunction with the SERP, BCA established the Benefits for

Corporate America, Inc. Rabbi Trust (the "Rabbi Trust") effective as of January 1, 2005.

13. The purpose of the Rabbi Trust is to accept and hold contributions made to the SERP and make distributions to participants of the SERP.

14. The Rabbi Trust contains the following key provision:

    a. **13.1** – Benefits payable to Participants and their beneficiaries under this Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered, or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

**B.  Establishment of the Benefits for Corporate America, Inc. Deferred Compensation Plan**

15. At some point in 2013, BCA amended and restated the SERP pursuant to a new deferred compensation plan called the Benefits for Corporate America, Inc. Deferred Compensation Plan (the "DC Plan"), effective as of January 1, 2013.

16. Upon information and belief, the DC Plan constitutes a funded deferred compensation plan.

17. Upon information and belief, the DC Plan does not meet the requirements of being an ERISA "top-hat" plan because the DC Plan is not an unfunded plan.

18. JT Realty was a "Participating Employer" under the terms of the DC Plan.

19. BSG was named as the "Administrator" of the DC Plan within the meaning of ERISA Section 3(16)(A), 29 U.S.C. § 1002(16)(A) and 29 C.F.R. § 2510.3-16.

20. Under the terms of the DC Plan, BSG designated the investment funds for the DC Plan.

21. BCA is the "Plan Sponsor" of the DC Plan.

22. An amended and restated trust called the Benefits for Corporate

America, Inc. Deferred Compensation Trust Amended and Restated Trust Agreement (the "Amended Trust"), was established in conjunction with the DC Plan, effective as of December 15, 2014.

23. The purpose of the Amended Trust is holding and investing contributions made to the DC Plan and earnings thereon.

24. Under the terms of the Amended Trust, BSG was the "Administrative Trustee" of the trust.

25. Under the terms of the Amended Trust, BSG, as the Administrative Trustee, was charged with the duty to invest and reinvest the assets of the trust.

26. As the Managing Member of BSG, Snyder made all decisions on behalf of BSG concerning the administration of the DC Plan and Amended Trust and the investment of the assets of the DC Plan and Amended Trust.

**C. Imprudent investment of DC Plan and Amended Trust Assets and Failure of Snyder and BSG to Pay Benefits Owed to Plaintiffs**

27. Snyder and BSG exercised discretionary authority and control with respect to the administration of the DC Plan and Amended Trust and the management, investment, and disposition of the assets of the DC Plan and Amended Trust.

28. As a result of, and in the course of, exercising such control over the assets of the DC Plan and Amended Trust, Snyder and BSG were acting as "fiduciaries" of the DC Plan and Amended Trust within the meaning of Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

29. On information and belief, Snyder and BSG also acted as investment fiduciaries of the DC Plan and Amended Trust under ERISA Section 3(21) as a result of receiving compensation for the provision of investment advice with respect to the DC Plan and/or the Amended Trust.

30. As of December 31, 2020, the DC Plan and Amended Trust held assets for the benefit of Martin and JT Realty in the amount of $2,168,359.95.

31. On or before December 28, 2020, Martin requested the payment of benefits to him from the DC Plan and Amended Trust.

32. On or before December 29, 2020, Snyder acknowledged in writing to Martin the request for payment of benefits.

33. On or before August 10, 2021, Snyder stated in writing to Martin that there was a delay in receiving expected funds and that the check in payment of Martin's benefits had not been mailed but that it would be sent.

34. On or about January 22, 2022, Snyder and BSG prepared a memorandum to participants of the DC Plan regarding the status of the plan and the Amended Trust.

35. In the memorandum, Snyder and BSG make the following statements/representations: (1) that "the amount of assets presently in the trust are insufficient to pay all expected benefits under the plan"; (2) Snyder and BSG intend to "shut down the trust and distribute all benefits to participants"; and (3) Snyder and BSG "do not anticipate making distributions from the trust until the Committee determines the priority of claims to be paid."

36. Based on the memorandum, upon information and belief, Plaintiffs allege that Snyder and BSG intend to use some or all of the funds held in the trust to pay benefits owed to participants other than Plaintiffs.

37. Based on the memorandum, upon information and belief, Plaintiffs allege that Snyder and BSG intend to create a "Committee" with the power and authority to distribute the funds held in the trust to pay benefits owed to participants other than Plaintiffs.

## FIRST CLAIM FOR RELIEF

**For Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

**Against Snyder and BSG**

38. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

39. Martin was a participant in the DC Plan within the meaning of ERISA.

40. BSG and Snyder acted as the DC Plan Administrator within the meaning of ERISA.

41. BSG and Snyder exercised discretionary authority and control with respect to the administration of the DC Plan and Amended Trust and the management, investment, and disposition of the DC Plan's assets, including determining how such assets were to be invested.

42. As a result of, and in the course of, exercising such control over the DC Plan's assets, Snyder and BSG were acting as "fiduciaries" of the DC Plan and Amended Trust within the meaning of Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

43. ERISA § 404(a), 29 U.S.C. § 1104(a)(1) required Snyder and BSG, when acting in their capacity as fiduciaries of the DC Plan, to act with respect to the DC Plan for the exclusive benefit of the DC Plan's participants with a high level of skill, prudence, and diligence, and to diversify the DC Plan's assets to minimize the risk of large losses.

44. Therefore, Snyder and BSG violated the terms of the DC Plan and their ERISA fiduciary duties to Martin by failing to pay Martin benefits owing under the DC Plan.

45. As a direct and proximate cause of the fiduciary breaches and ERISA violations, Plaintiffs are entitled to all such relief as available under ERISA.

46. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

**Claim for Relief Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)**

**Against Snyder, BSG, and DOES 1-10**

47. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

48. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), allows civil actions by participants and beneficiaries for relief for breaches of ERISA fiduciary provisions under ERISA § 409, 29 U.S.C. § 1109.

49. Consequently, this language permits benefit plan participants and beneficiaries to argue that the plan suffered losses due to alleged fiduciary duty breaches.

50. In the present case, BSG and Snyder served as the Administrative Trustee of the Amended Trust and Administrator of the DC Plan.

51. BSG and Snyder exercised discretionary authority and control with respect to the administration of the DC Plan and Amended Trust and the management, investment, and disposition of the DC Plan's assets, including determining how such assets were to be invested.

52. As a result of, and in the course of, exercising such control over the DC Plan's assets, Snyder and BSG were acting as "fiduciaries" of the DC Plan and Amended Trust within the meaning of Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

53. BSG and Snyder invested the assets of the DC Plan and the Amended Trust in an imprudent manner such that the amount of assets presently in the Amended Trust are insufficient to pay all benefits due under the DC Plan.

54. By imprudently investing the assets of the DC Plan and Amended Trust, Snyder and BSG breached their fiduciary duty under ERISA and are liable under ERISA §§ 502(a)(2) and 409.

55. For this claim, Plaintiffs seek to recover, on behalf of the DC Plan, all losses sustained by the DC Plan based on the improper investment of plan assets.

56. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

**Claim for Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

**Against Snyder, BSG, and DOES 1-10**

57.  Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

58.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant may bring a civil action to "(A) enjoin an act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

59.  A participant "can pursue the remedy that will put the [participant] in the position he or she would have attained but for the trustee's breach." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).

60.  At all relevant times, Snyder and BSG were fiduciaries with respect to the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

61.  Snyder and BSG owe certain duties to plan participants and beneficiaries under ERISA. Among the duties, ERISA imposes both a duty of loyalty and a duty of care. *See* 29 U.S.C. § 1104(a)(1).

62.  The duty of care compels a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

63.  Snyder and BSG violated the terms of the DC Plan and ERISA by imprudently investing the assets of DC Plan in such a manner that the amount of assets presently in the Amended Trust are insufficient to pay all benefits due under the DC Plan and Snyder and BSG have failed to pay Martin the benefits owing to him under the DC Plan.

64. Plaintiffs seek equitable relief to redress such violations of ERISA and the terms of the DC Plan including, but not limited to, surcharge.

65. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

**Claim for Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

**Against Snyder, BSG, and DOES 1-20**

66. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

67. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant may bring a civil action to "(A) enjoin an act or practice which violates any provision of this subchapter or the terms of the plan."

68. The DC Plan contains an anti-alienation provision providing that "[n]o benefit or interest of any Participant or Beneficiary under this Plan will be subject to any manner of assignment, alienation, anticipation, sale, transfer, pledge, or encumbrance, whether voluntary or involuntary."

69. Based on the January 22, 2022 memorandum, and upon information and belief, Plaintiffs allege that Snyder and BSG intend to use some or all of the funds held in the Amended Trust to pay benefits owed to participants other than Plaintiffs.

70. Based on the January 22, 2022 memorandum, and upon information and belief, Plaintiffs allege that Snyder and BSG intend to create a "Committee" with the power and authority to distribute the funds held in the Amended Trust to pay benefits owed to participants other than Plaintiffs.

71. Plaintiffs, therefore, request that this Court issue an injunction prohibiting Snyder, BSG, and DOES 1-20 from distributing the funds held in the Amended Trust to any participant other than Plaintiffs.

72. Plaintiffs further request that this Court issue an injunction prohibiting any future "Committee" established by or approved by Snyder and BSG from distributing the funds to any participant other than Plaintiffs.

73. Plaintiffs further seek the removal of all fiduciaries of the DC Plan and Amended Trust and the appointment of successor fiduciaries for the DC Plan and Amended Trust pursuant to Plaintiffs' selection and the Court's approval.

74. Plaintiffs further seek a permanent injunction enjoining Snyder and BSG who have breached their duties under ERISA from serving as ERISA fiduciaries in the future.

75. Lastly, Plaintiffs request a declaration from the Court confirming Plaintiffs' entitlement to the funds held in the Amended Trust for their benefit.

76. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor as follows:

1. Award Plaintiffs damages in the amount according to proof, but in the amount of at least $2,168,359.95.

2. Recovery on behalf of the DC Plan all losses sustained by the DC Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2);

3. Equitable relief and injunctive relief provided under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

4. Removal of Snyder and BSG as fiduciaries of the DC Plan and Amended Trust;

5. Appointment of successor fiduciaries of the DC Plan and Amended Trust;

6. A declaration from the Court confirming Plaintiffs' entitlement to the

funds held in the Amended Trust.

7. Pre- and post-judgment interest, as afforded by law;

8. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. §1132(g); and

9. Such other equitable and remedial relief as is appropriate.

DATED:  June 13, 2022                    MEYERS NAVE

By:     /s/ Janice P. Brown
    JANICE P. BROWN
    DAVID M. MIDDLETON
    KIANA M. CATON
    MEYERS NAVE
    Attorney for Plaintiffs
    TIMOTHY D. MARTIN
    and JT REALTY INC.